UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERNESTO PAGAN, | : | 3:21-cv-01490 (KAD) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| GERARD D. GAGNE, M.D., *et al.*, | : | APRIL 27, 2022 |
| Defendants. | : | |

## INITIAL REVIEW ORDER

Plaintiff, Ernesto Pagan, a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC") currently housed at Corrigan-Radgowski Correctional Center ("Corrigan") filed this civil rights complaint pursuant to 42 U.S.C. § 1983, against Dr. Gerard Gagne, Dr. Yesu, LCSW Michelle, LCSW Karem, Nurse Janine Brennan, and APRN Chena McPherson. He alleges deliberate indifference to his medical needs in violation of the Eighth Amendment; an equal protection claim under the Fourteenth Amendment, and a conspiracy to violate his civil rights. ECF No. 1. Plaintiff seeks compensatory and injunctive relief. *Id.* at ¶ 29

For the following reasons, the Plaintiff's Eighth Amendment claim of deliberate indifference to his mental health will proceed beyond initial review.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**ALLEGATION**S

Plaintiff is a veteran of the Vietnam war and an individual of Hispanic background who is not fluent in written and spoken English. Compl. ¶¶ 9, 12.

Since his return from the Vietnam war, Plaintiff has suffered from Post-Traumatic Stress Disorder ("PTSD") symptoms, including, *inter alia*, flashbacks, depression, anxiety, and sleeplessness. He has been continuously prescribed medication to treat his mental health and sleeplessness. *Id.* ¶¶ 10–11.

In April 2021, Pagan was transferred to Corrigan where Defendants Gagne, Yesu, Michelle, Karem, Brennan and McPherson have conspired with each other and other DOC employees to discontinue and refuse to renew inmates' mental health medications, including Pagan, for purposes of saving the State's budgeted money; they also refused to prescribe new or alternative prescriptive therapy regimens. *Id.* ¶¶13–14. Defendants have discontinued Plaintiff's "prescriptive therapy regimen" without regard for the discontinuation's effect on him. *Id.* ¶ 17.

Defendants "knew or should have known that their actions or lack thereof would cause [him] harm and injury." *Id.* ¶ 18. Plaintiff has suffered emotional distress, depression, anxiety, flashback, sleeplessness last for months, migraine headaches, nausea, and upset stomach. *Id.* ¶ 19.

Defendant Brennan and Defendant Michelle (Plaintiff's appointed clinician) exacerbated Plaintiff's suffering. *Id.* ¶ 20–21. Defendant Michelle maliciously downplayed Plaintiff's suffering and listed him as "stable" to justify the discontinuance of his prescriptive therapy regimen. *Id.* ¶ 21. Defendants Michelle and Brennan consistently mocked Plaintiff's language barrier and discriminated against him on this basis of his "nationality." *Id.* ¶ 22. Plaintiff repeatedly requested that he be assigned to a Spanish-speaking clinician with whom he could communicate his horrors, fears, depression and loneliness. *Id.* ¶ 23. Defendant Michelle does not speak Spanish and refused to refer Plaintiff to a Spanish-speaking therapist. *Id.* ¶ 24. As a result, Plaintiff experienced greater stress and anxiety. *Id.*

Brennan, who is a supervisor responsible for the health services administrative remedies, maliciously played games with Plaintiff's filings, thereby compounding his stress and anxiety. *Id.* ¶ 25. She used the language barrier as a basis to claim: "We do not allow inmates to pick and choose, that is called 'staff splitting' and we will not tolerate it." *Id.* ¶ 25.

Plaintiff became so dehumanized by Defendants' malicious and hateful conduct towards him, he felt that he was "begging" for care and proper treatment. *Id.* ¶ 26. On July 16, 2021, Brennan responded to Plaintiff's plea for care by stating: "We do not prescribe for pain or sleep." *Id.* ¶ 27.

As a result of Defendants' conduct, Plaintiff continues to suffer. *Id.* ¶ 28.

**DISCUSSION**

The Complaint alleges three causes of action: (1) an assertion that Defendants engaged in

a conspiracy to violate his rights, *see* Compl. ¶ 14; (2) a claim for deliberate indifference to his mental health in violation of the Eighth Amendment, *see* Compl. ¶ 30; and a violation of Fourteenth Amendment equal protection clause arising out of defendants' failure to provide him "comparable and meaningful health care," *see* Comp. ¶ 31.

**Conspiracy**

Plaintiff alleges that Defendants have conspired with each other and unnamed DOC employees to prevent him from receiving the appropriate mental health treatment. *Id.* at ¶ 14. Plaintiff has not, however, alleged any plausible conspiracy claims. To state a viable conspiracy claim plaintiff must provide some factual basis supporting "a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Jackson v. Nassau County*, 552 F. Supp. 3d 350, 382 (S.D.N.Y. 2021) (internal quotations marks and citations omitted); *see also Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (same). Plaintiff's complaint contains no allegations that would provide a factual basis for a meeting of the minds or that the individual defendants were purposefully acting in concert. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (stating that "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient); *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) ("Allegations of conspiracy can be neither vague nor conclusory, but must allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy.") (internal quotations omitted).

And even if it were factually supported, Plaintiff's conspiracy claim is barred under the doctrine of intracorporate conspiracy, which provides that "'officers, agents and employees of a single corporate or municipal entity are legally incapable of conspiring together' and thus cannot

be liable for conspiracy under . . . section 1983." *Blue v. City of New York*, No. 16-CV-9990 (VSB), 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018) (citing *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (affirming application of intracorporate conspiracy doctrine in conspiracy claim under 42 U.S.C. § 1985(3))).[1] The intracorporate conspiracy doctrine does not apply to bar conspiracy claims against "individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Bond v. Bd. of Educ. of the City of N.Y.*, No. 97–CV–1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999). Nevertheless, mere allegation that the defendants had personal bias against the plaintiff is insufficient to satisfy the exception. *See Vega v. Artus*, 610 F. Supp. 2d 185, 206 (N.D.N.Y. 2009) (holding that prisoner must do more than allege that defendants were motivated by personal bias against him to show that defendants were pursuing personal interests wholly separate and apart from the entity). For the exception to apply, a plaintiff must allege that the defendants acted other than in the normal course of their corporate duties. *Girard v. 94th St. & Fifth Ave. Corp.,* 530 F.2d 66, 72 (2d Cir. 1976) (internal quotations marks and citation omitted).

Plaintiff in this case has not alleged that facts suggesting that Defendants were acting other than in the course of their duties. To the contrary, he alleges that all acts by the Defendants were committed in the course of their official duties and for the benefit of the DOC—including to "save money off the state budget." Compl. ¶ 14. Thus, Plaintiff's civil conspiracy claim would be dismissed under the intracorporate conspiracy doctrine even if it were factually adequate. *See*

---

[1] Although the Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to § 1983 cases, district courts within the Second Circuit have consistently applied the doctrine in § 1983 cases and, in particular, to § 1983 cases filed by prisoners. *See, e.g., Germano v. Cook*, No. 3:21-cv-00550 (JAM), 2021 WL 2810170, at *3 (D. Conn. July 6, 2021); *Schlosser v. Walker*, No. 3:20-cv-433(WIG), 2020 WL 7324679, at *3–4 (D. Conn. Dec. 11, 2020); *Jones v. Wagner*, No. 3:20-cv-475(VAB), 2020 WL 4272002, at *5 (D. Conn. July 24, 2020); *Edwards v. Annucci*, No. 17 CV 5018(VB), 2019 WL 1284295, at *9–10 (S.D.N.Y. Mar. 20, 2019).

*Baltas v. Rivera*, No. 3:19-CV-1043 (MPS), 2019 WL 3944435, at *10 (D. Conn. Aug. 21, 2019) (dismissing § 1983 conspiracy claims).

**Eighth Amendment Deliberate Indifference**

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 103–04 (1976)); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing the difference between the objective and subjective components of an Eight Amendment claim). "Objectively, the alleged deprivation must be 'sufficiently serious,' in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Plaintiff alleges he suffers from multiple severe mental health disorders to include PTSD, Depression, and Anxiety for which he requires pharmacological therapies. These allegations are sufficient to plausibly allege a serious medical need.

Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d

6

263, 280–81 (2d Cir. 2006). "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, *i.e.*, a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (quotations and citations omitted).

Plaintiff's challenge to the discontinuation of his prescriptions essentially challenges a medical judgment by his providers, and generally a "mere disagreement over the proper treatment does not create a constitutional claim" where "the treatment given is adequate." *Chance*, 143 F.3d at 703; *see also Hernandez v. Keane*, 341 F.3d 137, 146–47 (2d Cir. 2003) (affirming a judgment as a matter of law and stating that an issue purely of medical judgment is "precisely the sort of issue that cannot form the basis of a deliberate indifference claim"). Nevertheless, a medical provider may act with deliberate indifference by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive. *Chance*, 143 F.3d at 703–04; *see also Braham v. Perelmuter*, No. 3:15-cv-1094 (JCH), 2017 WL 3222532, at *16–17 (D. Conn. July 28, 2017) (denying a motion for summary judgment where issues of material fact remained as to whether the prescribed treatment plan was derived from sound medical judgment). Here, Plaintiff has alleged that Defendants discontinued his prescriptions not as a treatment decision, but for monetary or budgetary reasons. "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance*, 143 F.3d at 703. For initial review purposes, Plaintiff has sufficiently alleged that Defendants acted with conscious disregard to his mental health needs. Thus, the Court will permit Plaintiff's Eight Amendment claim of deliberate indifference to proceed against Defendants in their individual capacities.

Plaintiff's complaint also indicates that Defendants Michelle and Brennan refused his requests to refer him to a Spanish-speaking therapist, which he claims exacerbated his mental stress

and anxiety. Compl. at ¶¶ 24, 25. For purposes of initial review, the Court will permit this claim to proceed against Brennan and Michelle in their individual capacities for further development.

### Fourteenth Amendment Equal Protection

Plaintiff alleges that both Defendants Michelle and Brennan mistreated him on the basis of his being Hispanic and his use of Spanish rather than English. Compl. at ¶¶ 21-25.[2]

The Fourteenth Amendment Equal Protection Clause does not mandate identical treatment for each individual but "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A plaintiff may state a claim of intentional discrimination in violation of the Equal Protection Clause in several ways, including, for example, by identifying: (1) "a law or policy that expressly classifies persons on the basis of race;" (2) "a facially neutral law or policy that has been applied in an intentionally discriminatory manner;" or (3) "a facially neutral statute or policy [that] has an adverse effect and . . . was motivated by discriminatory animus." *See Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (citation omitted), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)).

A plaintiff may also plead an equal protection violation under a selective enforcement theory. To state a selective enforcement claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v.*

---

[2] Plaintiff's complaint does not plausibly allege the personal involvement of the other defendants in any equal protection violation.

*Saunder*s, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

Plaintiff asserts that his denial of "access to comparable and meaningful mental health care constitutes [] discrimination based on [his] Hispanic nationality in violation of the Equal Protection Clause." Compl. at ¶ 31. "Hispanics as an ethnic group do constitute a suspect class for the purpose of equal protection analysis." *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) (citing *Keyes v. Sch. Dist. No. 1*, 413 U.S. 189, 197 (1973); *Hernandez v. Texas*, 347 U.S. 475 477–79 (1954)). However, Plaintiff has not alleged facts to support his conclusory contention that Defendants' decisions about his mental health care were motivated by a discriminatory animus against Hispanic individuals. *See Buckner v. Shumlin*, No. 1:12-cv-90-jgm, 2013 WL 6571814, at *9–*10 (D. Vt. Dec. 13, 2013) ("Despite alleging 'facts consistent with a discrimination claim[,]' Buckner's claim 'nevertheless stops short of the line between possibility and plausibility of entitlement to relief,' because plaintiff[ ] do[es] not allege any facts supporting an inference of racial animus.'") (quoting *Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010) (alterations in *Buckner*)). Nor has Plaintiff alleged that similarly situated, non-Hispanic individuals were treated more favorably so as to raise an inference of discriminatory conduct for his selective enforcement claim. *See Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) (concluding plaintiff's "mere[] alleg[ations] that he is African-American, that [the officer] engaged in certain actions, and that he would not have engaged in these actions if [plaintiff] were another race" were insufficient to "to raise a right to relief [under the Equal Protection Clause of the Fourteenth Amendment] above the speculative level") (citations omitted).

**Official Capacity Claims**

Plaintiff has sued Defendants in their official capacities. Compl. ¶¶ 2–7. However, any claims for money damages against Defendants, who are state employees, in their official capacities must be dismissed as barred by the Eleventh Amendment. *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Nevertheless, a plaintiff may proceed against the defendants in their official capacities to the extent plaintiff alleges an ongoing constitutional violation. *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)). In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Here, Plaintiff requests an injunction to order that he receive "proper prescriptive therapy regimens." Compl ¶ 29(c). This relief is permissible under the Eleventh Amendment. And while injunctive relief in a prison litigation case must be narrowly tailored, proportional to the scope of the violation, and extend no further than necessary to remedy the violation, *see Brown v. Plata*, 563 U.S. 493, 531 (2011), the relief Plaintiff seeks is not obviously outside the scope of what may be permissible. The Court will permit this claim to proceed against Defendants in their official

capacities.

**ORDERS**

      **The Court enters the following orders:**

(1) For the foregoing reasons, the case shall proceed on Eighth Amendment deliberate indifference claims against Dr. Gerard Gagne, Dr. Yesu, LCSW Michelle, LCSW Karem, Nurse Janine Brennan, and APRN Chena McPherson in their individual and official capacities. Plaintiff's conspiracy claim, Fourteenth Amendment equal protection claim, and request for damages against any defendant in their official capacity are DISMISSED.

If Plaintiff believes he can allege adequate facts to support an equal protection claim, he may file an amended complaint, by May 27, 2022. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. He must name each defendant against whom he asserts claims in the case caption of his amended complaint.

(2) The Clerk shall verify the current work addresses for Dr. Gerard Gagne, Dr. Yesu, LCSW Michelle, LCSW Karem, Nurse Janine Brennan, and APRN Chena McPherson with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by May 18, 2022, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing. If a Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint

and this Order on against Dr. Gerard Gagne, Dr. Yesu, LCSW Michelle, LCSW Karem, Nurse Janine Brennan, and APRN Chena McPherson in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, by May 18, 2022 and to file a return of service by May 27, 2022.

(4) The Clerk shall mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to her. If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by October 27, 2022. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by November 28, 2022.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. **Failure to do so can result in the dismissal of the case**. Plaintiff must give notice of a new address even if he is incarcerated. He

should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

**SO ORDERED** this 27th day of April 2022 at Bridgeport, Connecticut.

                                                  __/s/ *Kari A. Dooley*_____
                                                  Kari A. Dooley
                                                  United States District Judge