UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERNESTO PAGAN, | ) | CASE NO. 3:21-cv-01490 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERARD D. GAGNE, M.D., *et al.*, | ) | JUNE 2, 2023 |
| *Defendant*s. | ) | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 33)**

Plaintiff Ernesto Pagan, a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"), filed this action under 42 U.S.C. § 1983 for civil rights violations that allegedly occurred while he was housed at the Corrigan-Radgowski Correctional Institution ("Corrigan").[1] Compl., ECF No. 1. On initial review, the Court permitted Plaintiff to proceed on his individual and official capacity claims of Eighth Amendment medical indifference against DOC Psychiatrist Gerard Gagne; Psychologist ("PsyD.") Yesu; Licensed Professional Counselor ("LPC") Michelle Binezewski; Licensed Clinical Social Worker ("LCSW") Karem Ballestas; RN Janine Brennan; and APRN Chena McPherson. IRO at 11.

On December 27, 2022, Defendants Dr. Gagne, PsyD. Yesu, LPC Binezewski, LCSW Ballestas, and RN Brennan filed a motion for summary judgment.[2] Mot. Summ. J., ECF No. 33.

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Publicly available information on the DOC website under the inmate search function using Plaintiff's inmate number, 194122, shows that Plaintiff is currently housed at Osborn Correctional Institution ("Osborn"). *See Inmate Information*, Conn. Dep't of Corr., http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=194122 (last visited June 2, 2023). Plaintiff has not, however, updated the Court with his new address in compliance with Local Rule 83.1(c)2 as instructed by the Court's initial review order. *See* Initial Review Order ("IRO") at 12–13, ECF No. 16. The IRO clearly advised Plaintiff that a failure to update the Court with his address could result in dismissal of his case. *Id.* Thus, Plaintiff's failure to comply with Rule 83.1(c)2 provides an additional ground for dismissal of this case.

[2] The record shows that APRN McPherson was never served in this action. The Court specifically instructed Plaintiff that he was responsible for effecting service on Defendant McPherson in her individual capacity and on Defendants in their official capacities. Am. Service Order at 1–2, ECF No. 22. As Plaintiff

1

Under District of Connecticut Local Rule 7(a)(2), Plaintiff's opposition to the motion for summary judgment was due within 21 days of the filing of Defendants' motion for summary judgment. To date, Plaintiff has not filed any opposition, nor has he sought an extension of time within which to do so.

After thorough review and consideration of Plaintiff's claims and Defendants' memorandum of law, Rule 56(a)1 statement of facts, and the evidentiary materials submitted, the Court concludes that Defendants' Motion for Summary Judgment is meritorious and for the reasons that follow, is GRANTED.

**FACTUAL BACKGROUND**

The following factual background is taken from the complaint,[3] Defendants' Rule 56(a)1 statement, and the evidentiary record.

**Plaintiff's Complaint**

Plaintiff is a veteran of the Vietnam War and an individual of Hispanic background who is not fluent in written or spoken English. Compl. ¶¶ 9, 12. Plaintiff alleges that he has suffered from Post-Traumatic Stress Disorder ("PTSD") symptoms, including, *inter alia*, flashbacks, depression, anxiety, and sleeplessness, and that he has been continuously prescribed medication to treat his mental health and sleeplessness. *Id.* ¶¶ 10–11. He alleges that after he was transferred to Corrigan in April 2021, Defendants discontinued his mental health medications and refused to prescribe him new or alternative prescriptive therapy regimens without regard for any adverse effects upon him.

---

has not effected service on Defendant McPherson consistent with Federal Rule of Civil Procedure 4, the Court dismisses Plaintiff's Eighth Amendment claims against her.

[3] The Court's review of the record includes the allegations of the complaint because the complaint is verified. *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (noting that a "verified complaint . . . may be considered as an affidavit" for summary judgment purposes); *Walcott v. Connaughton*, No. 3:17-CV-1150 (JCH), 2018 WL 6624195, at *1 n.1 (D. Conn. Dec. 18, 2018).

*Id.* ¶¶ 14, 17. He also claims that Defendants Brennan and Binezewski exacerbated his mental stress and anxiety by downplaying his suffering, mocking him based on his language barrier, and refusing to refer him to a Spanish-speaking therapist or afford relief for his requests for medical care. *Id.* ¶¶ 21–27.

On initial review, the Court determined that Plaintiff plausibly alleged that Defendants Dr. Gagne, PsyD. Yesu, LPC Binezewski, LCSW Ballestas, RN Brennan, and APRN McPherson acted with deliberate indifference to his mental health needs. IRO at 7–8. The Court also permitted Plaintiff to proceed on his claim that RN Brennan and LPC Binezewski exacerbated his mental stress and anxiety by refusing his request for referral to a Spanish-speaking therapist. *Id.* at 8; *see* Compl. ¶¶ 24–25.

**Undisputed Facts**

The following facts are undisputed unless otherwise noted.[4]

On April 22, 2021, Plaintiff met with RN Brennan, a member of Corrigan's mental health staff. Defs.' SOF ¶ 4. At that time, RN Brennan informed Plaintiff that he would be seen by a doctor when his prescriptions for Remeron and Trazadone expired, that but these medications were not to be used on a long-term basis for sleep and were likely to be discontinued. *Id.* ¶¶ 5–6.

That same day, Plaintiff filed an inmate request "to speak to somebody please about what happen[ed] to me before I came here [Corrigan.]" *Id.* ¶ 7; *see* Medical Record at 20, ECF No. 33-

---

[4] The following facts are taken from Defendants' Local Rule 56(a)1 Statement and supporting exhibits. *See* Defs.' Local Rule. 56(a)1 Statement of Material Facts ("Defs.' SOF"), ECF No. 33-2. Local Rule 56(a)(1) provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Defendants provided Plaintiff with the Notice to *Pro Se* Litigant required under Local Rules of Civil Procedure 56(b). *See* Notice to *Pro Se* Litigant, ECF No. 33-3. As indicated above, Plaintiff did not respond to the motion for summary judgment and therefore, where supported by the record, the Defendants' 56(a)1 statements are deemed admitted.

5. RN Brennan's response indicated that Plaintiff's request was "referred." Defs.' SOF ¶ 8. On May 4, 2021, Plaintiff was seen by LPC Binezewski, who noted that Plaintiff failed to report anything to her at that time. *Id.* ¶ 9; Medical Record at 26–29.

After Plaintiff filed another request dated May 6, 2021 to speak with someone about a prior incident, RN Brennan responded on May 7, 2021:

> Your clinician is Michele. She will work on MH with you. Reporting of incidents from 3 months ago at a previous facility should and will be handled by custody. Not mental health. Michele relayed your issue to the CT Office.

*Id.* at 30; Defs.' SOF ¶ 10. In a medical note dated May 26, 2021, LPC Binezewski reported that Plaintiff was seen by mental health staff, "was given time to discuss" an assault in 2020 resulting in his hospitalization, and was provided "[s]upportive counseling." *Id.* ¶ 11; Medical Record at 31–35.

On June 21, 2021, Plaintiff met with Dr. Gagne, a DOC principal psychiatrist, who had reviewed his chart. Defs.' SOF ¶¶ 12–13; Medical Record at 36–43; Dr. Gagne Decl. ¶¶ 3, 8–9, ECF No. 33-6. At that time, Dr. Gagne assessed that:

> Trazodone has not demonstrated long-term efficacy in either sleep-onset insomnia or sleep maintenance insomnia and will therefore be discontinued[.] The gold standard of treatment for actual insomnia is CBT for insomnia[.] It is not medications like Trazodone, Benadryl, Remeron or certainly antipsychotics like Seroquel[.] Sleep restriction therapy, in which time in bed is limited to the estimated average among of nighttime sleep, would be more useful to this IM than prescribing medications, in my opinion[.] I am unclear how committed this IM is to these interventions.

Medical Record at 37. Dr. Gagne avers that he prescribed paroxetine/Paxil because he believed it could be helpful. Dr. Gagne Decl. ¶ 9. He explains that Plaintiff agreed to the Paxil, although he protested the removal of the Trazodone and Remeron. *Id.*

Thereafter, Plaintiff met with mental health staff several times between July 14 and August 31, 2021. Defs.' SOF ¶ 17; Medical Record at 44–93; Dr. Gagne Decl. ¶ 11.

4

In a medical noted dated July 14, 2021, LPC Binezewski stated that mental health staff met with Plaintiff upon his request, but that he could not be "redirected" from his demands for his medication, although he appeared stable and not a threat to himself or others. Medical Record at 45–49.

Medical notes dated July 28, 2021 reflect that Plaintiff met with both LPC Binezewski and RN Brennan but that he resisted mental health assistance and expressed that he only wanted to talk about his medication. *Id.* at 51–60.

On August 13, 2021, LPC Binezewski indicated that she met with Plaintiff after he expressed thoughts of self-harm and that she assessed him as stable for continued placement in the general population and not a risk for suicide or self-harm. *Id.* at 65–72.

On August 18, 2021, LPC Monica Mobley noted that Plaintiff expressed frustration regarding his custody and discontinuation of his medications. *Id.* at 73–78.

In a medical noted dated August 24, 2021, PsyD. Yesu wrote that he saw Plaintiff on August 23, 2021, in response to his written request. *Id.* at 79–83. Yesu indicated that Plaintiff reported a negative interaction with an officer but was not in any acute distress. *Id.*

On August 31, 2021, LPC Binezewski reported that Plaintiff was seen by mental health staff, afforded "time to vent re current stressors" and provided "supportive counseling." *Id.* at 84–93. She assessed that Plaintiff was stable for the general population, not a threat to himself or others, and had linear and logical thought with appropriate affect and mood. *Id.*

On September 13, 2021, Dr. Gagne met with Plaintiff for a mental health follow up. Defs.' SOF ¶ 19; Medical Record at 94–96; Dr. Gagne Decl. ¶¶ 3, 8. Dr. Gagne noted that Plaintiff complained about Dr. Gagne taking inmates off of their medications, but that he was 98% compliant with his Paxil without apparent side effects; that he appeared stable with linear future-

oriented thoughts; and that he chose to complain about failings of medical and mental health staff rather than responding to attempts to engage him therapeutically. Defs.' SOF ¶ 20; Medical Record at 95; Dr. Gagne Decl. ¶ 12.

The medical record shows that Plaintiff was thereafter seen several times by mental health staff between September 16 and December 22, 2021.

On September 16, 2021, LPC Binezewski noted that she saw Plaintiff upon his written request and that he was seeking his medications, complaining of his inability to sleep, and having a linear logical thought process. Medical Record at 100–03. Her medical note dated September 23, 2021 reflects that she assessed him as having linear and logical thought and appropriate mood. *Id.* at 107–10.

On October 18, 2021, LPC Binezewski noted that Plaintiff was seen by mental health staff, at which time he stated, "I just want my meds," complained of pain and lack of sleep, and then admitted to needing to see mental health staff. *Id.* at 113–16.

Later, on November 29, 2021, LPC Binezewski noted that Plaintiff was not receptive to mental health services and stated, "I don't need mental health" and "[i]f you give me my mental health meds back I'll stop the lawsuit." *Id.* at 117–21. On December 22, 2021, LPC Binezewski indicated that Plaintiff met with mental health staff and was assessed as stable for the general population and not a threat to others or himself. Defs.' SOF ¶ 21; Medical Record at 122–25; Dr. Gagne Decl. ¶ 13.

On December 27, 2021, Dr. Gagne met with Plaintiff for a mental health follow up. Defs.' SOF ¶ 22. Dr. Gagne's medical notes reflect that he assessed Plaintiff to be 97% compliant with his Paxil medication and "[a]ttempted to explain the limited role of medication (e.g. short-term use of off-label medications as hypnotic), role of his diet, exercise and the like in his getting better."

Medical Record at 127. He indicated that Plaintiff was "help-rejecting, looking for a variety of medications, both medically and mentally, not seeing himself as an agent in his getting better." *Id.* Dr. Gagne avers that he did not see any changes in Plaintiff's symptomology to indicate that Plaintiff should be placed back on Remeron and Trazodone, which he had requested during his session with Dr. Gagne. Dr. Gagne Decl. ¶¶ 14–15.

In a medical note dated January 23, 2022, LPC Binezewski indicated that she met with Plaintiff on January 22, 2022, at which time Plaintiff was not receptive to mental health assistance and appeared to assume that his counselor could prescribe medications. Medical Record at 129–32. Binezewski later reported on February 16, 2022 that Plaintiff was "not interested in engaging in MH for therapy" but had "been managing without MH medications for some time" and was "stable for continued stay in APOD[.]" *Id.* at 135–38.

In a medical note dated March 31, 2022, PsyD. Yesu described Plaintiff as "organized and future-oriented" but "focused on sleep for which he demanded medication." *Id.* at 141–44. Yesu indicated that he "had repeatedly explained that [Plaintiff] had been evaluated by psychiatry, and that the determination of [mental health] medication was made by psychiatry[,]" and that Plaintiff thereafter expressed that "he did not want [mental health] services anymore." *Id.* at 141.

A medical note dated May 2, 2022 reflects that LPC Gomes met with Plaintiff after he submitted a written request "eluding to wanting to die" and that she assessed him as stable, although he expressed that he was tired of writing for mental health services and was upset over not having his prescriptions and not receiving medical care in the time frame he expected. *Id.* at 149–52.

On May 3, 2022, LPC Binezewski wrote that Plaintiff was seen at his cell door but refused to come to meet with mental health staff in an office. *Id.* at 154–56.

7

In a medical noted dated June 20, 2022, LPC Binezewski stated that Plaintiff complained to mental health staff about not telling the doctor what to prescribe and that he was assessed as irritable and angry but stable for the general population. *Id.* at 157–62.

A medical note dated June 23, 2022 reflects that PsyD. Yesu spoke to Plaintiff, who indicated an interest in participating in mental health group services. *Id.* at 163–66. However, on July 1, 2022, Yesu wrote that Plaintiff was no longer interested in attending a mental health group. *Id.* at 167.

All Corrigan staff have access to translation services. Defs.' SOF ¶ 25; *see, e.g.*, Medical Record at 98. A non-Spanish speaking staff member, such as RN Brennan, can also request translation assistance from another staff member who speaks Spanish. Defs.' SOF ¶¶ 25–26. RN Brennan avers that she has never downplayed or dismissed Plaintiff's complaints or mocked him on the basis of his language or nationality, nor has she seen any other staff member do so. *Id.* ¶¶ 27–28; RN Brennan Decl. ¶¶ 7–8, 10, ECF No. 33-7.

The medical record reflects that RN Brennan processed all of Plaintiff's administrative remedies in accordance with DOC standard practices. *Id.* ¶ 29; *see* Medical Record at 20, 30, 50, 63–64, 106, 111. As RN Brennan explained, any change to Plaintiff's treatment plan or medication had to be approved by a prescribing doctor. Defs.' SOF ¶ 30; Medical Record at 12.

Plaintiff transferred to MacDougall-Walker Correctional Institution on August 17, 2022. Defs.' SOF ¶ 32. On August 19, 2022, Plaintiff was transferred to Osborn Correctional Institution. *Id.*

**LEGAL STANDARD**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation," but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotations omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented party's papers "liberally" and "interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotations omitted), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**DISCUSSION**

Plaintiff alleges that Defendants were deliberately indifferent to his serious mental health

needs in violation of the Eight Amendment. Compl. at 7. Defendants argue that Plaintiff cannot show deliberate indifference. Defs.' Mem. in Supp. at 4–10, ECF No. 33-1. After review of the record, and in the absence of any opposition, the Court agrees.

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners,' which includes needs for mental health care." *Spavone v. N.Y. Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal citations omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a claim for deliberate indifference to a serious medical need, a plaintiff's claim must first establish that the alleged deprivation is, "in objective terms, sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotations omitted). "Second, the charged official must act with a sufficiently culpable state of mind." *Id.*

Objectively, the inmate's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotations omitted). Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

To satisfy the *mens rea* prong, a prison official or medical staff member must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).

"[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that

10

evinces a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (internal quotations omitted). Further, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *see also Hathaway*, 37 F.3d at 70 (Jacobs, J., dissenting) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors."). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance*, 143 F.3d at 703.

The Court assumes without finding that Plaintiff suffers from an objectively serious mental health condition. As to the requisite *mens rea*, the evidentiary record raises no inference that any Defendant was actually aware of a substantial risk that Plaintiff would suffer serious harm as a result of their actions or inactions. To the contrary, the medical record demonstrates that Plaintiff was afforded numerous opportunities to receive and benefit from mental health treatment from Corrigan mental health staff prior to his transfer to McDougall-Walker on August 17, 2022. He was seen three times by Dr. Gagne. After reviewing Plaintiff's chart and meeting with him on June 21, 2021, Dr. Gagne determined that Trazadone and Remeron were not clinically indicated for Plaintiff. Defs.' SOF ¶¶ 12–14. Dr. Gagne assessed that a different medication, Paxil, would be better for Plaintiff, and in his subsequent meeting observed that Plaintiff appeared to tolerate the Paxil without side effects. *See id.* ¶ 14; Dr. Gagne Decl. ¶¶ 9, 12. Further, Defendants' evidence reflects that Dr. Gagne considered Plaintiff's request to be prescribed Remeron and Trazodone but declined to do so as no changes in Plaintiff's symptomology indicated that Plaintiff should be

11

placed back on those medications, and that Dr. Gagne "[a]ttempted to explain" to Plaintiff "the limited" or "short term" role of medication and the "role of his diet, exercise and the like in his getting better." Dr. Gagne Decl. ¶¶ 14–15; Medical Record at 127.

The medical record further reveals that mental health staff at Corrigan responded to Plaintiff's requests for mental health assistance, provided follow up mental health visits, and repeatedly offered counseling despite Plaintiff's resistance at times to receiving any mental health assistance. *See* Medical Record. This record belies any claim that RN Brennan and LPC Binezewski exacerbated Plaintiff's anxiety and stress in any way, including by refusing to refer him to a Spanish-speaking therapist. Instead, the record shows that Plaintiff principally expressed dissatisfaction and frustration with his mental health care due to the discontinuation of his Trazadone and Remeron prescriptions. *See id.* at 46, 52–57, 74, 95, 100, 113, 127, 129–30, 141, 149, 157.

Furthermore, Plaintiff has not raised an inference, nor does the record suggest, that any Defendant—other than Dr. Gagne—had the ability or authority to change his treatment plan. *See* RN Brennan Decl. ¶ 12; Medical Record at 141 (medical note by Yesu stating that he "repeatedly explained that [Plaintiff] had been evaluated by psychiatry, and that the determination of [mental health] medication was made by psychiatry"). Absent evidence that Defendants Yesu, Binezewski, Ballestas, or Brennan had the ability to change Plaintiff's treatment plan but failed to do so, the record cannot support Plaintiff's claim that these Defendants acted with deliberate indifference to his need for mental health medication or alternative treatment. *See Davis v. Supervisor*, No. 3:21-CV-00648 (SVN), 2022 WL 3681558, at *6 (D. Conn. Aug. 25, 2022) (dismissing claims against the defendant where there was no indication that she could have provided the plaintiff with more timely treatment or provision of his medication); *Blaine v. Burnes*, No. 3:20CV1039 (KAD), 2020

WL 5659101, at *7 (D. Conn. Sept. 23, 2020) (dismissing claim where the alleged facts failed to suggest that the defendant had the ability to ensure that the plaintiff was provided with certain medical treatment).

Plaintiff's complaint distills down to a disagreement with Dr. Gagne's treatment methods, specifically the discontinuation of his prescriptions. It is well established that "[a] prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (citing *Estelle*, 429 U.S. at 106–07). Although a medical provider may act with deliberate indifference by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive, *Chance*, 143 F.3d at 703–04 (quotations omitted), Plaintiff alleges in only conclusory terms that his prescriptions were discontinued for monetary or budgetary reasons without regard for the effects the discontinuation would have on him, Compl. ¶¶ 14, 17. And the medical record substantiates that Dr. Gagne discontinued Plaintiff's prescriptions based on his medical judgment regarding Plaintiff's treatment needs. *See* Medical Record at 36–42, 94–96, 126–28; Gagne Decl. ¶¶ 8–9, 12, 14–15. There is no evidence that Dr. Gagne acted with any improper motive.

In sum, the Court concludes that no reasonable jury—upon review of the present record—could determine that Defendants violated the Eighth Amendment by acting with deliberate indifference to Plaintiff's serious mental health needs.

**CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment [ECF No. 33] is GRANTED.[5] Further, the Court DISMISSES without prejudice all claims against Chena

---

[5] Defendants do not appear to have been served in their official capacity in this matter. Nevertheless, Defendants argue that Plaintiff's official capacity requests for injunctive relief are moot because he is now

McPherson because she was never served in this action in compliance with Federal Rule of Civil Procedure 4. The Clerk of the Court is instructed to enter judgment in favor of Defendants Dr. Gerard G. Gagne, PsyD. Yesu, LPC Michelle Binezewski, LCSW Karem Ballestas, and RN Janine Brennan and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of June 2023

        /s/ Kari A. Dooley
        KARI A. DOOLEY
        UNITED STATES DISTRICT JUDGE

---

housed at Osborn. Defs.' Mem. in Supp. at 13. The Court agrees and accordingly, grants Defendants' motion for summary judgment on Plaintiff's official capacity claims. *See Shepherd v. Goord*, 662 F.3d 603, 610 (2011). In addition, Plaintiff could not sustain any official capacity claims against Defendants because the record does not establish an Eighth Amendment violation. *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) (holding that requests for injunctive relief are remedies and are dismissed with the underlying claim).